**In re Anonymous No. 27 D.B. 90**

Disciplinary Board Docket No. 27 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

LIEBER, *Member,* November 19, 1991—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Su-

preme Court of Pennsylvania submits its finding and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On February 26, 1990, Office of Disciplinary Counsel filed a petition for discipline charging respondent with violations of the following Disciplinary Rules of the Code of Professional Responsibility arising from his unlawful possession of cocaine:

Disciplinary Rule 1-102(A)(3)—dealing with a lawyer engaging in illegal conduct involving moral turpitude; and

Disciplinary Rule 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law.

Although properly served on March 5, 1990, respondent failed to file an answer within the prescribed time. He answered on May 22, 1990, after the matter had already been referred to Hearing Committee [    ] and set for a hearing on June 18, 1990. Respondent admitted to possession of cocaine, but asserted that he had neither purchased the drug nor held it for distribution. He denied that his conduct involved moral turpitude or reflected adversely on his fitness to practice law. As new matter, respondent noted that he had entered a plea of nolo contendere to a violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.C.S. §780-104(2), and had been admitted to a program of probation without

14

verdict, which he had successfully completed. He asked that the board consider the alleged misconduct as a "momentary lapse of character," rather than an inherent character flaw. (Respondent's answer and new matter to petition for discipline, §24). In support thereof, respondent pointed to the absence of prior disciplinary actions and/or complaints by clients throughout his 17 years of practice.

The Hearing Committee, chaired by [    ] met on June 18, 1990. Office of Disciplinary Counsel presented its case by way of a stipulation containing all the facts of the case. Respondent rested as to the issue of misconduct. The Hearing Committee found that petitioner's evidence established a prima facie violation of at least one of the Disciplinary Rules charged. Respondent presented character witnesses and testified himself as to the issue of appropriate discipline. On August 10, 1990, the record was closed following the deposition of two additional witnesses. The Hearing Committee concluded that, in light of respondent's undisputed violation of the criminal law, public discipline was required. The committee noted the "impressive credentials and character testimony" which respondent had submitted and recommended that public censure be imposed.

## FINDINGS OF FACT

The Disciplinary Board adopts and incorporates by reference herein the following findings of fact made by the Hearing Committee, which are amply supported by the evidence, testimony and stipulation of the parties.

(1)   Respondent, [     ], was born in 1947, admitted to practice law in the Commonwealth of Pennsylvania in 1973, and his office is located at [     ].

(2)   On February 11, 1988, respondent was shot in the chest by an assailant in his law office at [     ].

(3)   After the shooting, respondent was taken to [A] Medical Center for surgery.

(4)   At the Medical Center, while respondent was being prepared for surgery, hospital personnel discovered in his shirt pocket two vials containing a white powder.

(5)   Laboratory tests determined that the substance discovered by hospital personnel was cocaine.

(6)   Cocaine is classified as a Schedule II controlled substance, pursuant to the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.C.S. §780-104(2).

(7)   At that time, respondent was not licensed or registered as required by Pennsylvania law to possess cocaine.

(8)   Respondent knowingly or intentionally possessed a controlled substance in violation of 35 Pa.C.S. §780-113(a)(16), an offense punishable by imprisonment of up to one year or a fine of up to $5,000, or both.

(9)   On or about March 28, 1988, respondent was charged with unlawful possession of cocaine, in violation of 35 Pa.C.S. §780.113(a)(16).

(10)   On June 23, 1988, respondent entered a plea of nolo contendere to the possession charge.

(11) On that same day, the court accepted respondent's plea and, pursuant to 35 Pa.C.S. §780-117, sentenced respondent to one year probation without verdict.

(12) By order dated June 29, 1989, respondent's probation was terminated and the record of his criminal matter was expunged.

(13) Respondent is well respected as a legal advocate in the community wherein he practices.

(14) Respondent is well respected for his honesty and integrity in the legal community wherein he practices.

(15) Respondent has already received "punishment" for his conduct by way of a great deal of local publicity regarding the facts of the case.

## CONCLUSIONS OF LAW

Respondent's misconduct violates the following Disciplinary Rules of the Code of Professional Responsibility:

Disciplinary Rule 1-102(A)(3)—dealing with a lawyer engaging in illegal conduct involving moral turpitude; and

Disciplinary Rule 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law.

## DISCUSSION

The intriguing facts of this disciplinary proceeding threaten to overshadow the real issue before the board, which is the determination of the appropriate measure of discipline to be imposed.

According to the record, on February 11, 1988, respondent returned to his office from two hearings before a district justice to find an irate former client waiting to see him. The man entered respondent's office, pulled a pistol from his jacket, and shot him in the chest. Respondent managed to thwart a second attempt on his life by jamming his class ring behind the trigger of the assailant's gun. Later, when respondent was being prepared for surgery at [A] Medical Center, two small vials of white powder were found in his jacket pocket. Upon testing, the powder proved to be cocaine. Respondent was charged with possession of cocaine in violation of the Dangerous Drug Device and Cosmetic Act. He insisted that the shooting had nothing to do with any drug transaction.

The shooting and subsequent discovery of cocaine created a wave of attention in the local press. Respondent's notoriety was further exacerbated when a police officer was charged with having attempted to conceal the presence of the cocaine. Respondent denied any relationship with the policeman or any involvement with the officer's alleged misconduct. Nevertheless, the local media gave considerable publicity to all the developments in the case: from the apprehension of the assailant and respondent's plea, to the investigation and ultimate suspension of the police officer.

The Hearing Committee relied on *Office of Disciplinary Counsel v. Simon*, 510 Pa. 312, 507 A.2d 1215 (1986), the sole Pennsylvania precedent on point, to reach

its conclusion that public discipline was warranted. Noting that there was no dispute as to respondent's criminal conduct, the committee concluded that, "as an officer of the court, respondent had shown contempt for that which he is legally and morally bound to uphold." In light, however, of respondent's "impressive credentials and character testimony," the Hearing Committee recommended public censure—as the very least type of public discipline appropriate under the circumstances. *Id.* Office of Disciplinary Counsel concurred.

Although the board agrees that *Simon* controls, we find it necessary to distinguish between the facts of that case and those of this proceeding. In *Simon,* the Supreme Court ordered the disbarment of an attorney who was convicted of federal drug charges. Simon acted as the middle man in a drug sale. He obtained the purchaser and personally delivered the cocaine for distribution on the streets. Simon entered a not guilty plea, but was convicted of two counts of violations of 21 U.S.C. §§846 and 841 respectively. He was sentenced to three months imprisonment and a fine of $1,000 as to Count I and two years imprisonment, suspended, with probation commencing upon his release from prison along with 200 hours of community service work as to Count II.

Here, respondent was not charged with drug trafficking. The minuscule amount of cocaine found on his person following the shooting was intended for his personal use, and not for distribution on the streets. In fact, the only similarities between respondent's misconduct and Simon's

criminal acts are that both attorneys possessed cocaine, both acted without a profit motive, and both argued that their misconduct did not involve the attorney client relationship.

In *Simon,* the Supreme Court enunciated a strict disciplinary policy, directing that lawyers convicted of illegal drug activities be regarded as having violated the highest ethical responsibilities of their profession. *Simon,* 507 A.2d at 1219-20. While the court did not create a per se rule to be applied to all drug offenses, the effect of the sweeping language in *Simon* requires that *any* criminal violation of the drug laws be sanctioned severely:

"'The public should be protected from those who are not qualified to be lawyers by reason of a deficiency in education or moral standards ... but who nevertheless seek to practice law.' (citations omitted). An attorney '...should refrain from *all* illegal and morally reprehensible conduct. Because of his position in society, *even minor violations of law* ... tend to lessen public confidence in the legal profession. Obedience to the law exemplifies respect for the law.'" *Id.,* 507 A.2d at 1219, quoting Code of Professional Responsibility EC 1-5 (1974). (emphasis added)

The court held that Simon's intentional and knowing conduct disregarded the most fundamental ethical considerations of a lawyer, involved moral turpitude and adversely reflected on his fitness to practice law. *Id.* In accord with numerous other jurisdictions, the Supreme Court defined moral turpitude as "anything done know-

ingly contrary to justice, honesty, principle or good morals." *Id.* at 1220, quoting *Muniz v. State,* 575 S.W.2d 408 (Texas 1978). The court cited decisions from Hawaii, California, Oklahoma, and Nebraska which similarly held that drug related offenses constituted misconduct involving moral turpitude. See *Id.*, 507 A.2d at 1220, n. 8.*

The board recognizes that the broad language of *Simon* does not contemplate lesser sanctions for minor violations, considerations of personal use or the absence of profit motives. This expansive application of *Simon,* especially in circumstances such as these, where respondent enters a nolo plea and successfully completes PWOV, presents a troubling issue for the board, which is concerned that the special disciplinary treatment of drug-related offenses not result in their selective prosecution by the Office of Disciplinary Counsel to the apparent exclusion of DUI cases and all other alternative rehabilitative dispositions.

Were it not for the *Simon* case, the board would be inclined to favor private discipline in light of the totality of the circumstances before us. Nevertheless, we feel constrained to follow the policy set in *Simon* and reluctantly recommend public discipline, albeit in its least severe form, that of public censure.

---

* See also *Office of Disciplinary Counsel v. Scott,* Hawaii Supct no. 14725 (December 18, 1990), where a Hawaii lawyer who pleaded no contest to criminal charges arising from his attempted fraudulent obtaining of a controlled substance received a 90-day suspension.

## RECOMMENDATION

Accordingly, in recognition of the precedential significance of *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215 (1986), and in consideration of the recommendations of the Hearing Committee and Office of Disciplinary Counsel, the Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that public discipline be imposed in the form of a public censure. It is further recommended that respondent pay costs pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Keller, Brown, Hill and Powell did not participate in the adjudication.

## ORDER

And now, November 19, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated March 28, 1991, it is hereby ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing March 9, 1992, in [    ]. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice Papadakos dissent and would suspend respondent for one year.